# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| WILLIAM LAWRENCE CANADA,<br><br>      Plaintiff,<br> v.<br><br>JOHN M. MCHUGH, Secretary of the Army,<br><br>      Defendant. | <br><br><br><br><br><br><br>Case No. 4:14-cv-00009-SLG |

## ORDER RE SUMMARY JUDGMENT

This is an employment discrimination action brought by a self-represented litigant against his former employer. Before the Court at Docket 34 is Defendant John M. McHugh's Motion for Summary Judgment. The motion is unopposed; Plaintiff William Lawrence Canada did not file any response to the motion, although he had requested and received additional time to do so.[1] In early 2013, Mr. Canada was removed from his job at Fort Greely, Alaska where he had worked for the United States Army as an Alcohol and Drug Control Officer. He asserts a claim for wrongful termination, because his removal occurred after he filed an equal employment opportunity (EEO) complaint alleging age discrimination. He also asserts related claims for age discrimination and a hostile work environment.[2]

---

[1] *See* Docket 47.

[2] Mr. Canada used the court form for an employment discrimination complaint, which cites to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* However, Title VII does not protect against age discrimination; rather, Mr. Canada's claims fall under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* and the Court has subject matter jurisdiction on that basis. *See also* 28 U.S.C. § 1331 (federal question jurisdictional statute).

# BACKGROUND

## A. Factual Background

Mr. Canada's complaint is directed at the alleged conduct of Fort Greely's Deputy Garrison Commander and the alleged conduct of Mr. Canada's direct supervisor, the Human Resources (HR) Director. The trouble between Mr. Canada and his superiors appears to have begun in earnest when Mr. Canada "refused to plan with [the HR Director] to allow [a certain coworker] to urinalysis test [him] in [March, 2012]."[3] Mr. Canada acknowledges that his job required urinalysis testing, but asserts that he had "satisfied" that requirement with a "Pre-Employment urinalysis test," and he refused the testing because he "had lost all faith in [the coworker's] integrity."[4] Mr. Canada also asserts that he had a conversation with an Army drug testing specialist who informed him that "there is no requirement by higher headquarters" for him to be urinalysis tested. Mr. Canada asserts that when he shared this information with the HR Director, she "became irate threatening me in an email with immediate discipline if I ever went over her head again to clarify anything with anyone."[5] Mr. Canada initiated EEO proceedings against the HR Director on or about June 26, 2012 with respect to these and other statements.[6]

The problems were exacerbated when Mr. Canada applied for a managerial

---

[3] Docket 8-2 (Second Supplement to Amended Complaint) at 3.

[4] Docket 8-2 at 2–3.

[5] Docket 8-2 at 3.

[6] Docket 34-3 at 29.

vacancy in the summer of 2012. Mr. Canada asserts that both the Deputy Garrison Commander and the HR Director knew his age when they "made age discriminatory remarks against [him] . . . during their . . . recruitments for the [] vacancy."[7] Mr. Canada's complaint does not elaborate on the alleged remarks. However, Defendant recites some of the alleged comments in the motion for summary judgment and included a number of documents from Mr. Canada's EEO proceedings as exhibits to that motion. These exhibits include Mr. Canada's Formal Complaint of Discrimination filed with the Army's EEO office on August 3, 2012.[8] The facts gleaned from that document and from Mr. Canada's filings in this case, taken as true for the purposes of this summary judgment determination, are as follows:

- On May 15, 2012, when Mr. Canada refused to allow the coworker to conduct a urinalysis test on him, the HR Director twice told Mr. Canada, "Put on your 'Big Boy pants' and grow up."

- On May 24, 2012, when Mr. Canada again refused the urinalysis, the HR Director again twice told Mr. Canada, "Put on your 'Big Boy pants' and grow up" and he "told her that was offensive to [him], and asked her to stop saying that."

- On June 18, 2012, the HR Director told Mr. Canada "how extremely upset" she was for him "going over [her] head," and issued him a "strong verbal warning of an impending letter of reprimand" if he did so again. When Mr. Canada asked during this exchange about the job vacancy "[the HR Director] sarcastically replied 'We're building a matrix to evaluate younger

---

[7] Docket 8-2 at 3. Mr. Canada indicates in his filings that he turned 66 years of age on January 18, 2013. Docket 8-2 at 4.

[8] Docket 34-3 at 13–14.

- candidates.'"

- On July 17, 2012, at a meeting with Mr. Canada, the Deputy Garrison Commander, and the HR Director, the HR Director allegedly stated to Mr. Canada, "We have selected a younger candidate with more wealth and depth of experience with the Army who is more compatible with our leadership and mentoring styles."[9]

Sometime later that same year the HR Director gave Mr. Canada an Annual Performance Appraisal that rated him "Good." Mr. Canada believed he deserved a rating of "Exceptional."[10] At a meeting on December 12, 2012, with the Deputy Garrison Commander and the HR Director, Mr. Canada expressed his dissatisfaction with the rating and requested a "Change of Rater." Also at that meeting, Mr. Canada opined that the HR Director "appears to be suffering from late-phase alcoholism" and read from a document he had written about her "History and Symptoms." Mr. Canada asserts that the Deputy Garrison Commander then insisted that Mr. Canada give him the document, and Mr. Canada, indicating that he felt "bullied," reluctantly gave him the document.[11] In the document, Mr. Canada made the following accusations about his direct supervisor:

- she engaged in "heavy drinking and hard partying;"
- "She really 'went crazy' drinking and partying after her divorce;"
- she had an extra-marital affair with a former Deputy Garrison Commander;
- she "cruises the bars, taverns and lodges every weekend looking for a

---

[9] *Id.*

[10] Docket 8-2 at 4.

[11] Docket 8-2 at 4.

- stranger she can take to her home for a weekend of drinking and sex;"
- she lied about his work performance; and
- she created "a sexualized office culture that is hostile towards men, especially 'older men.'"[12]

Mr. Canada asserts that instead of receiving a change in rater, the Deputy Garrison Commander used this documentation to initiate Mr. Canada's termination. On December 27, 2012, the Deputy Garrison Commander gave Mr. Canada a Notice of Proposed Removal that asserted two bases for removal: (1) Making Malicious Statements Against Your Supervisor, and (2) Making False Statements.[13] On January 18, 2013, Mr. Canada was notified that he was being removed from employment effective January 26, 2013.[14]

## B. Procedural Background

Mr. Canada initiated this case on May 7, 2014. Mr. Canada did not participate in preparing the first initial Scheduling and Planning Conference Report at Docket 19, so the Court issued an Order of Potential Dismissal for Failure to Prosecute dated October 29, 2014.[15] Mr. Canada then participated in preparing a new Scheduling and Planning Report filed November 28, 2014.[16] The parties both submitted witness lists.[17] Defendant filed

---

[12] Docket 40-2 at 38–40 (Mr. Canada's report on the HR Director).

[13] Docket 40-2 at 32–34.

[14] Docket 40-2 at 49.

[15] Docket 20 (Order).

[16] Docket 21 (Report).

[17] *See* Dockets 24, 29 (Witness Lists).

this motion for summary judgment on November 6, 2015.[18]

On November 9, 2015, the Court issued a notice regarding the motion for summary judgment informing Mr. Canada of the deadlines and requirements for response.[19] On November 13, 2015, Mr. Canada sent the Court a letter that asked the Court to deny the motion for summary judgment but without presenting any argument.[20] The Court informed Mr. Canada that letters are not a permissible way to present issues to the Court, and struck the letter without prejudice to Mr. Canada filing an opposition to the motion for summary judgment. The order also again referred Mr. Canada to the summary judgment notice at Docket 38 and indicated that he could request additional time to oppose the motion for good cause shown.[21] On November 30, 2015, Mr. Canada filed a motion requesting 60 additional days to respond to the summary judgment motion.[22] On December 30, 2015, the Court granted Mr. Canada's request for additional time and set a January 25, 2016 deadline for Mr. Canada's filing. But, as indicated above, nothing further has been filed by either party.

//

//

//

---

[18] Docket 34.

[19] Docket 38 (Notice).

[20] Docket 43.

[21] Docket 44 (Order).

[22] Docket 45 (Motion).

**DISCUSSION**

A.  **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[23] Genuine disputes of material fact that preclude summary judgment are "disputes over facts that might affect the outcome of the suit under the governing law."[24]

When considering a motion for summary judgment, a court must accept as true all evidence in favor of the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[25] The Court remains mindful of its duty to liberally construe the filings of a self-represented party.[26] And a non-moving party's failure to file an opposition to a motion for summary judgment does not excuse the moving party's affirmative duty under Rule 56 to demonstrate his entitlement to judgment as a matter of law.[27] For that reason, the Court has assessed Defendant's motion on the merits.

B.  **Hostile Work Environment**

Mr. Canada asserts that the Deputy Garrison Commander and the HR Director

---

[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[24] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

[25] *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[26] *Hamilton v. United States*, 67 F.3d 761, 764 (9th Cir. 1995).

[27] *See Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).

created a "hostile work environment of mismanagement, undermining, and sabotaging" his work.[28] Construing the Amended Complaint liberally, this may indicate Mr. Canada's intent to assert a hostile work environment claim. In order to prevail on such a claim, Mr. Canada must show that his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.[29] Mr. Canada must show that the work environment was both subjectively and objectively hostile, considering the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[30] Defendant cited *Vasquez v. Cty. of Los Angeles*, in which the Ninth Circuit compared a number of hostile work environment cases, and discussed how severe and pervasive the hostile events must be to support a hostile work environment claim.[31] The Court has reviewed these cases and finds that the handful of events described by Mr. Canada, even if all proven true, are insufficient to raise a genuine issue of material fact related to a hostile work environment claim. Therefore, Defendant would be entitled to summary judgment on the issue if Mr. Canada intended to assert such a claim.

//

---

[28] Docket 8-1 at 1.

[29] *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

[30] *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (citing *Nichols v. Azteca Rest. Enter.*, 256 F.3d 864, 872 (9th Cir. 2001) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993))).

[31] 349 F.3d 634, 643–44 (9th Cir. 2003).

**C.	Retaliation**

A federal employee who considers himself a victim of retaliation due to the filing of an age discrimination complaint may assert a retaliation claim under the federal-sector provision of the ADEA.[32] That provision states that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age."[33] ADEA claims based on circumstantial evidence are assessed on summary judgment by the *McDonnell Douglas* burden-shifting evidentiary framework.[34]

> Under the *McDonnell Douglas* framework, a plaintiff must carry the initial burden to establish a prima facie case that creates an inference of discrimination. If the employee establishes a prima facie case, an inference of discrimination arises and the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the burden shifts back to the employer to prove that the employer's explanation is a pretext for discrimination.[35]

29 U.S.C. § 633a(a) of the ADEA protects federal employees who complain of age discrimination from retaliation.[36] In *Shelley v. Geren*, the Ninth Circuit addressed the burden of proof at the summary judgment stage for an ADEA claim based on retaliation, and held that a plaintiff must first establish a prima facie case that he made a complaint

---

[32] *Gomez-Perez v. Potter*, 553 U.S. 474, 477 (2008).

[33] 29 U.S.C. § 633a(a).

[34] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *see Shelley v. Geren*, 666 F.3d 599, 607–08 (9th Cir. 2012) (the *McDonnell Douglas* framework continues to apply to motions for summary judgment in ADEA cases even though the Supreme Court held in *Gross v. FBL Financial Servs., Inc.* that the plaintiff must prove at trial that age was the "but for" cause of the employer's adverse action. 557 U.S. 167, 177 (2009)).

[35] *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015).

[36] *Gomez-Perez*, 553 U.S. at 477.

of age discrimination and that he suffered an adverse employment action.[37] The employee must also present evidence "adequate to create an inference that an employment decision was based on an illegal discriminatory criterion."[38] The burden of production then shifts to the employer to articulate a legitimate non-discriminatory reason for its adverse employment action. If that burden of production is met, then the plaintiff must demonstrate that there is a genuine issue of material fact as to whether the employer's purported reason for its adverse action is a pretext for retaliation.[39] If the case proceeds to trial, the plaintiff must carry the burden to prove that a complaint of age discrimination was the "but-for" cause of the adverse employment action.[40] Accordingly, to survive summary judgment in this case, the evidence taken as a whole and in the light most favorable to Mr. Canada must be sufficient to permit a rational trier of fact to conclude that Mr. Canada's age discrimination EEO complaint in the summer of 2012 was the "but-for" cause of his later termination.[41]

Defendant does not dispute that Mr. Canada engaged in protected activity when he filed the EEO complaint and that he suffered an adverse employment action. But Mr. Canada has not established a prima facie case of retaliation because the record contains virtually no evidence to support any inference that Mr. Canada's removal was based on

---

[37] 666 F.3d 599 (9th Cir. 2012).

[38] *Shelley*, 666 F.3d at 608 (formatting and citation omitted).

[39] *Poland v. Chertoff*, 494 F.3d 1174, 1179–80 & n.1 (9th Cir. 2007).

[40] *Gross*, 557 U.S. at 176.

[41] *See Scheick v. Tecumseh Public Schools*, 766 F.3d 523, 531–32 (6th Cir. 2014).

the filing of the EEO complaint. The only potential causal link in the record is timing: Mr. Canada initiated EEO proceedings on or about June 26, 2012, and filed a formal complaint on or about August 3, 2012; he received his notice of proposed removal on December 27, 2012. But this timing alone is not enough to demonstrate a prima facie claim of retaliation. And even if it was sufficient for a prima facie showing, Defendant has produced a legitimate, nondiscriminatory reason for Mr. Canada's removal, and timing alone would be insufficient for Mr. Canada to establish that the proffered reason was a pretext for discrimination.[42] Accordingly, Mr. Canada has not raised a genuine dispute of material fact regarding retaliation and Defendant is entitled to summary judgment on the retaliation claim.

**D.     Age Discrimination**

Mr. Canada also appears to be asserting that he was terminated because of his age.[43] To establish a prima facie case of age discrimination under the ADEA, a plaintiff must establish that he or she was (1) at least 40 years old, (2) performing a job satisfactorily, (3) discharged, and (4) either replaced by a substantially younger employee with equal or inferior qualification or discharged under circumstances giving rise to an inference of age discrimination.[44] A difference of ten years or more is presumptively

---

[42] *See Sanford v. Landmark Protection, Inc.*, 495 Fed. Appx. 783, 784 (9th Cir. 2012) ("timing alone is insufficient to establish pretext") (citing *Stegall v. Citadell Broad. Co.*, 350 F.3d 1061, 1065–66 (9th Cir. 2004)). *See also Fleming v. IASIS Healthcare Corp.*, --- F. Supp. ----, 2015 WL 9302301, at *9 (D. Ariz. Dec. 22, 2015)

[43] Docket 8 at 3.

[44] *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012).

substantial.[45] And "[a]n inference of discrimination can be established by showing the employer had a continuing need for the employee's skills and services in that their various duties were still being performed or by showing that others not in their protected class were treated more favorably."[46]

Here, Defendant interpreted Mr. Canada's age discrimination claim as raising a failure-to-promote claim, and conceded that Mr. Canada "has arguably established a *prima facie* case."[47] But if Mr. Canada wanted to raise a failure-to-promote claim he would have only needed to check the box labeled "Failure to promote me" that appeared directly beneath the box he did check ("Termination of my employment") on the civil rights complaint form.[48] Regardless, if Mr. Canada intended to raise a failure-to-promote claim and established a prima facie case of age discrimination in that regard, Defendant would be entitled to summary judgment on such a claim. Once a prima facie case is made, the burden would then shift to Defendant to provide a non-discriminatory explanation for its hiring decision.[49] Defendant has fully met this burden by demonstrating that the Army engaged in a reasonably objective and thorough assessment of the candidates for the vacancy and Mr. Canada ranked near the bottom, even when the HR Director's

---

[45] *France*, 795 F.3d at 1174.

[46] *Sheppard*, 694 F.3d at 1049–50 (formatting omitted).

[47] Docket 34 at 22. To establish an ADEA failure-to-promote case a plaintiff must produce evidence that he or she was (1) at least forty years old, (2) qualified for the position, (3) denied the position, and (4) the promotion was given to a substantially younger person. *France*, 795 F.3d at 1174.

[48] Docket 8 at 3.

[49] *Shelley*, 666 F.3d at 609; *Sheppard*, 694 F.3d at 1049–50.

assessment of the candidates is removed from the analysis.[50] Defendant also produced evidence that the person selected for the vacancy had already held a similar position for two years, had a documented history of excellence, and had the highest-ranked application as rated by the HR Director and three other evaluators.[51]

The articulation of a legitimate non-discriminatory reason shifts the burden back to Mr. Canada to raise a genuine factual question as to whether the proffered reason is pretextual.[52] "The plaintiff can prove pretext (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer. All of the evidence—whether direct or indirect—is to be considered cumulatively."[53]

Defendant's proffered reason for the hiring decision is not internally inconsistent or otherwise unbelievable. Defendant cites to *Merrick v. Farmers Ins. Group*, where the Ninth Circuit did not find evidence of pretext in an employer's comment that he chose another employee for promotion because he was a "bright, intelligent, knowledgeable young man."[54] Here, the alleged statements about "big boy pants" are insensitive, but they do not support a finding of age discrimination. Similarly, Mr. Canada recognized that

---

[50] Docket 34 at 7–9, 33–35.

[51] *See* Docket 34 at 7–9.

[52] *Shelley*, 666 F.3d at 609.

[53] *Id.* (internal quotation marks and citation omitted).

[54] Docket 34 at 23; 892 F.2d 1434, 1438–39 (9th Cir. 1990).

the HR Director's statement about building a matrix to evaluate younger candidates was "sarcastic," and Defendant has produced considerable evidence supporting a conclusion that no such matrix was created or used.[55] The Court finds the matrix statement at most a stray remark that does not support an inference of age discrimination as a basis for a failure-to-promote claim.

The two remaining alleged statements are more direct. Mr. Canada asserts that both the HR Director and the Deputy Garrison Commander seem to have suggested that being "younger" was a valuable attribute in the person they hired instead of promoting Mr. Canada because they said, "We have selected a younger candidate," and "We needed someone younger." These statements are similar to the employer's statement in *France* expressing a preference for "young, dynamic agents."[56] The Ninth Circuit panel found that that statement "probably goes beyond a stray remark . . . although standing alone this evidence would be thin support to create a genuine dispute of material fact."[57] The Court finds these alleged statements by the HR Director and the Deputy Garrison Commander of the same class as the statement in *France*: probably more than stray remarks, but insufficient to create a genuine dispute of material fact regarding pretext. Accordingly, Mr. Canada has not identified a genuine issue of material fact as to pretext and Defendant is entitled to summary judgment on any age discrimination claim that Mr. Canada intended to assert for a failure to promote.

---

[55] Docket 34 at 7; Docket 34-4.

[56] *France*, 795 F.3d at 1172.

[57] *Id.* at 1173.

Case No. 4:14-cv-00009-SLG, *Canada v. McHugh*
Order re Summary Judgment
Page 14 of 15

Mr. Canada has also not established a prima facie age discrimination case with respect to his termination because it appears from the complaint he filed in this action that his superiors did not think he was performing his job satisfactorily, and neither Mr. Canada nor the Defendant said anything about his replacement. While the age comments allegedly made regarding the Army's decision not to promote Mr. Canada in the summer of 2012 may suggest some bias held by the Deputy Garrison Commander and the HR Director in filling the vacancy, the Court has no information regarding the Army's continuing need for Mr. Canada's skills or services or that anyone outside the protected class was treated more favorably when Mr. Canada was terminated. Rather, it appears that Mr. Canada's termination was based in large part on the scathing report he wrote about his supervisor. Accordingly, summary judgment to the Defendant is appropriate on the age discrimination claim with respect to Mr. Canada's termination.

Therefore, IT IS ORDERED that the Motion for Summary Judgment at Docket 34 is GRANTED. This action is DISMISSED with prejudice. The Clerk of Court is directed to enter a judgment for Defendant John McHugh accordingly.

DATED this 27th day of April, 2015 at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE